UNITED STATES BANKRUPTCY COURT      **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                 :
                                       :
       JOSHUA SIMON MARGULIES,      :      Chapter 7
                                       :      Case No. 10-14012 (SMB)
                                       :
                    Debtor.        :
------------------------------------------------------X
DENNIS HOUGH,                       :
                                       :
                Plaintiff,        :
                                       :
            – against –            :      Adv. Proc. No. 10-04050
                                       :
JOSHUA SIMON MARGULIES and      :
USAA CASUALTY INSURANCE         :
COMPANY,                          :
                                       :
                Defendants.      :
------------------------------------------------------X

## MEMORANDUM DECISION DENYING USAA MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FOR PERMISSIVE ABSTENTION TO STAY THIS ADVERSARY PROCEEDING AND TO DISMISS FOR FAILURE TO STATE A CLAIM

**A P P E A R A N C E S :**

STANLEY K. SHAPIRO, ESQ.
225 Broadway, Suite 1803
New York, New York 10007

*Attorney for Plaintiff Dennis Hough*

OLSHAN GRUNDMAN FROME ROSENZWEIG
  & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
        Thomas J. Fleming, Esq.
        Fredrick J. Levy, Esq.
        Howard J. Smith, Esq.
            Of Counsel

– and –

ROBERT M. SPADARO, ESQ.
17 Battery Place, Suite 1103
New York, New York 10004
*Attorneys for Defendant USAA Casualty*
*Insurance Company*

SHAFFERMAN & FELDMAN LLP
286 Madison Avenue, Suite 502
New York, New York 10017
 Joel M. Shafferman, Esq.
  Of Counsel
*Attorneys for Defendant Joshua Simon Margulies*

**STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

 The plaintiff Dennis Hough was injured when he was struck by a car driven by the debtor, Joshua Simon Margulies.  He recovered a judgment against Margulies which Margulies' liability insurer, defendant USAA Casualty Insurance Company ("USAA"), refuses to pay. Hough has brought this adversary proceeding to declare the judgment non-dischargeable under 11 U.S.C. § 523(a)(6), or alternatively, to recover the unsatisfied judgment from USAA up to the policy limits.  USAA moved to dismiss for lack of subject matter jurisdiction, for permissive abstention, to stay this adversary proceeding, or to dismiss the complaint for failure to state a claim for relief.  The Court concludes that it enjoys subject matter jurisdiction over Hough's claim against USAA, and declines to abstain in the exercise of discretion, stay this proceeding or dismiss the complaint.

**BACKGROUND**

**A.**  **The State Court Proceedings**

 The relevant facts are not in dispute.  Margulies struck Hough with his automobile on August 3, 2000, (*Complaint Objecting to Dischargeability Pursuant to 11 U.S.C. § 523(a)(6), for*

2

*Judgment Pursuant to Section 3420 of the New York State Insurance Law, and for Declaratory Relief Pursuant to 11 U.S.C. § 105(a)*, dated Oct. 25, 2010 ("*Adversary Complaint*"), at ¶ 14 (ECF Doc. # 1)),[1] and eventually pleaded guilty to misdemeanor assault in the third degree under New York Penal Law § 120.00(2).[2]  (*Id.* at ¶ 17.)  Three years later, Hough sued Margulies in New York state court contending that Margulies negligently operated his vehicle.  (*Id.* at ¶ 18.)  USAA failed to appear or answer on Margulies' behalf, or commence a declaratory judgment action that it did not have the duty to defend or indemnify.[3]  (*Id.* at ¶¶ 19-20.)  USAA also failed to serve Hough with a notice of disclaimer pursuant to New York State Insurance Law § 3420(d)(2).[4]  (*Id.* at ¶ 21.)  The state court entered a judgment on default on November 16, 2005 in the total amount of $4,868,263.56, inclusive of interest, costs and disbursements (the "Judgment").  (*Id.* at ¶¶ 22, 24.)

The Judgment was never paid, and on May 4, 2007, Hough commenced a direct action against USAA in New York state court to recover the unpaid Judgment up to the limits of the

---

[1]    Citations to "ECF" refer to the docket in adversary proceeding no. 10-4050.

[2]    A person is guilty of misdemeanor assault in the third degree when he "recklessly causes physical injury to another person."  N.Y. PENAL LAW § 120.00(2).

[3]    USAA had issued an automobile insurance policy to insure Margulies and his automobile for injury to another for up to $300,000, (*Adversary Complaint* at ¶¶ 6, 8), and an umbrella policy that insured Margulies for up to $1 million.  (*Id.* at ¶¶ 7, 9.)  The two policies are referred to collectively as the "Policies," and both were in effect on August 3, 2000.  (*Id.* at ¶ 10.)

[4]    Section 3420(d)(2) provides as follows:

   If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

Policies pursuant to § 3420 of the New York State Insurance Law (the "3420 Action").[5]  Hough

moved for summary judgment, (*id.* at ¶ 31), and USAA opposed the motion arguing that the

Policies did not cover the Judgment because Margulies intentionally caused Hough's injuries.

(*Id.* at ¶ 32.)  Initially, the state court concluded that USAA had breached its duty to defend, and

could not, therefore, go behind the default judgment to raise defenses to Hough's claim against

Margulies.  (Decision & Order, dated July 1, 2010 ("*July 2010 Order*"), at 2.)[6]  However, the

defense to coverage did not implicate a defense to Hough's claim against Margulies, whether

Margulies acted intentionally was never litigated and collateral estoppel did not bar USAA from

raising the intentional nature of Margulies' conduct in the 3420 Action.  (*Id.*)  Finally,

Margulies' plea to a crime with a criminal intent of recklessness did not foreclose a finding that

his actions fell within the Policies' intentional actions exclusions.  (*Id.*)  In the end, whether

---

[5]    Insurance Law § 3420 provides in pertinent part as follows:

(a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

        . . . .

(2) A provision that in case judgment against the insured or the insured's personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

        . . . .

(b) Subject to the limitations and conditions of paragraph two of subsection (a) of this section, an action may be maintained by the following persons against the insurer upon any policy or contract of liability insurance that is governed by such paragraph, to recover the amount of a judgment against the insured or his personal representative:

(1) any person who, or the personal representative of any person who, has obtained a judgment against the insured or the insured's personal representative, for damages for injury sustained or loss or damage occasioned during the life of the policy or contract . . . .

[6]    The *July 2010 Order* is attached as Exhibit A to the *Adversary Complaint*.

4

Margulies intentionally caused Hough's injuries was a question of fact that precluded summary judgment.  (*Id.*)

Hough appealed from the *July 2010 Order*,[7] and also moved to renew and reargue his motion for summary judgment.  (*Adversary Complaint* at 7, n.1.)  The state court granted reargument and vacated the *July 2010 Order*, although for the most part, reaffirmed its prior determination denying the motion for summary judgment.  (*See* Decision & Order, filed May 13, 2011 ("*May 2011 Order*"), at 2-3.)[8]  The one exception is that it granted summary judgment to the extent of dismissing USAA's defense that Margulies failed to cooperate.  (*Id.* at 3.)  The Appellate Division affirmed the *May 2011 Order* earlier this year.  *See Hough v. USAA Cas. Ins. Co.*, 940 N.Y.S.2d 41, 42 (N.Y. App. Div. 2012).

## B.    The Bankruptcy Case

Margulies filed this chapter 7 case on July 26, 2010, and received his discharge on March 17, 2011.  In the interim, Hough filed this adversary proceeding asserting a single claim for alternative relief.  He contends that Margulies caused his injuries willfully and maliciously, and the Judgment is not dischargeable under 11 U.S.C. § 523(a)(6).  Alternatively, Margulies did not intentionally cause his injuries, and Hough is entitled to recover under the Policies to the extent of their limits.  Margulies moved for judgment on the pleadings and for summary judgment, and the Court denied his motion.  Margulies has moved to reargue the denial of his motion for judgment on the pleadings, and that motion will be addressed in a separate decision.

---

[7]    The Appellate Division dismissed this appeal as abandoned.  *See Hough v. USAA Casualty Ins. Co.*, 940 N.Y.S.2d 41, 42 (N.Y. App. Div. 2012).

[8]    The *May 2011 Order* is attached as Exhibit 1 to *Defendant USAA Casualty Insurance Company's Support for and Response to the Debtor-Defendant's Motion for Judgment on the Pleadings and Summary Judgment Dismissing the Complaint*, dated Dec. 14, 2011 (ECF Doc. # 27).

USAA filed its own motion to dismiss for lack of subject matter jurisdiction, for permissive abstention, to stay this adversary proceeding and to dismiss for failure to state a claim. Its principal contention is that the resolution of the insurance litigation between itself and Hough will not affect the administration of the case. Even if jurisdiction exists, the Court should abstain from deciding the insurance coverage dispute as part of the adversary proceeding, and stay this adversary proceeding pending the resolution of the 3420 Action. Finally, USAA contends that the complaint is legally insufficient.

## DISCUSSION

### A.    Subject Matter Jurisdiction

When considering a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), a court must accept the material factual allegations in the complaint as true, but need not draw inferences favorable to the plaintiff. *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2005); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A court may also consider materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence. *J.S.*, 386 F.3d at 110; *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). The party asserting that the court has subject matter jurisdiction bears the burden of proving it. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Truong v. Litman*, No. 06 Civ. 1431(SHS), 2006 WL 3408573, at *3 (S.D.N.Y. Nov. 22, 2006), *aff'd*, 312 Fed. Appx. 377 (2d Cir. 2009). Where the court "relies solely on the pleadings and supporting affidavits, the plaintiff need only make a *prima facie* showing of jurisdiction." *Robinson*, 21 F.3d at 507; *accord CutCo. Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).

6

Consideration of the bankruptcy court's subject matter jurisdiction begins with 28 U.S.C.

§ 1334.  Subsection (a) grants the district court exclusive jurisdiction over bankruptcy cases.

Subsection (b) grants the district court "original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11."  The district

court may refer its bankruptcy jurisdiction to the bankruptcy court.  28 U.S.C. § 157(a).  The

United States District Court for the Southern District of New York has referred its bankruptcy

jurisdiction to this Court pursuant to its Amended Standing Order of Reference, 12 Misc. 00032

(S.D.N.Y. Jan. 31, 2012).

Proceedings that arise under title 11, or arise in a case under title 11 correspond to the

Court's "core" jurisdiction.  *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and

determine . . . all core proceedings arising under title 11, or arising in a case under title 11 . . . .");

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) ("[S]ection 157 apparently equates

core proceedings with the categories of 'arising under' and 'arising in' proceedings.").

Generally, a core proceeding is one that invokes a substantive right under title 11, or could only

arise in the context of a bankruptcy case.  *Binder v. Price Waterhouse & Co., LLP (In re Resorts*

*Int'l, Inc.)*, 372 F.3d 154, 162-63 (3d Cir. 2004); *Wood*, 825 F.2d at 97; *Liberty Mut. Ins. Co. v.*

*Lone Star Indus., Inc.*, 313 B.R. 9, 16 (D. Conn. 2004).

A proceeding is "related to" a case under title 11, and falls within its non-core

jurisdiction,[9] if the outcome might have a "conceivable effect" on the estate.  *Publicker Indus.*

*Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992); *see U.S.*

*Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir.

---

[9]      "Related to" proceedings correspond to the Court's non-core jurisdiction.  *Resorts Int'l*, 372 F.3d at 162;
*see Wood*, 825 F.2d at 97.

2002); *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). Thus, "[a]n action is related to the bankruptcy case if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994; *accord Beebe Int'l, Inc. v. French Am. Banking Corp. (In re Wedtech Corp.)*, 72 B.R. 313, 315-16 (Bankr. S.D.N.Y. 1987). If the action between third parties will have a collateral estoppel effect on the debtor, the third party action is "related to" the bankruptcy case for jurisdictional purposes. *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1143 (6th Cir. 1991). Conversely, the bankruptcy court lacks "related to" jurisdiction over proceedings that have no effect on the debtor. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).

It is well settled that "the debtors' rights under its insurance policies are property of a debtor's estate under § 541(a) of the Code." *St. Clare's Hosp. & Health Ctr. v. Ins. Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.)*, 934 F.2d 15, 18-19 (2d Cir. 1991); *accord MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir.) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."), *cert. denied,* 488 U.S. 868 (1988). A suit by a third-party insured against the insurer asserting derivative rights based on the conduct of the debtor-insured is inseparable from the debtor's own coverage and "well within the Bankruptcy Court's jurisdiction over [the debtor's] assets." *Manville*, 837 F.2d at 92-93. The bankruptcy court also has jurisdiction over third-party non-debtor claims that affect the estate's rights in its insurance policies. *Quigley Co., Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 53 (2d Cir. 2012).

These principles lead to the conclusion that the Court has subject matter jurisdiction over the coverage dispute between Hough and USAA asserted in this adversary proceeding. First, the Policies are property of the estate notwithstanding Margulies' failure to list them in his schedule of personal property (Schedule B). Second, Hough stands in Margulies' shoes; his rights against USAA are derivative, no more and no less than Margulies' rights against USAA. *See D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 637 (N.Y. 1990); *Wenig v. Glen Falls Indem. Co.*, 61 N.E.2d 442, 443 (N.Y. 1945).

Third, the disposition of the coverage question may have a collateral estoppel effect on the dischargeability issue. To prove that Margulies acted willfully under 11 U.S.C. § 523(a)(6), Hough must demonstrate that Margulies deliberately intended to injure Hough and not merely that Margulies committed an intentional act that unintentionally inflicted injuries on Hough. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In order to establish malice, Hough must prove that Margulies acted wrongfully and "without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996); *accord Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Malice may be implied from the acts and conduct of the debtor in the context of the surrounding circumstances. *Stelluti*, 94 F.3d at 88. If Margulies drove his vehicle into Hough with the intent to injure him, one can reasonably infer that he did it without "just cause."

The answer to the coverage question will depend, in the first instance, on the terms of the Policies; they have not been provided to the Court so the precise inclusionary or exclusionary language remains a mystery. Nevertheless, the *May 2011 Order* acknowledged that the Policies excluded intentional acts, and this is consistent with the public policy of New York. *See Messersmith v. Am. Fidelity Co.*, 133 N.E. 432, 433 (N.Y. 1921) (Cardozo, J.) (An insurance

9

liability policy cannot be read to cover willful injuries because "the fundamental principle that no one shall be permitted to take advantage of his own wrong would import the limitation."). The "willful and malicious" language is closely related to the concept of "intentional" torts which "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself,'" *Kawaauhau*, 523 U.S. at 61-62 (quoting RESTATEMENT (SECOND) OF TORTS § 8A cmt. *a* at 15 (1964) (emphasis added in *Kawaauhau*)), and courts have read terms like "accident" and "occurrence" in liability policies to exclude intentional torts, *i.e.*, conduct intended to cause an injury, but to cover intentional conduct that causes an unintended injury. *E.g.*, *Cowan v. Ernest Codelia, P.C.*, No. 98 Civ. 5548 (JGK), 1999 WL 1029729, at *7 (S.D.N.Y. Nov. 10, 1999) ("There is a difference between intentional acts and intentional injuries: Intentional acts may result in unintended injuries, and such injuries may be covered, even though the act that caused the injury was intentional."); *Miller v. Cont'l Ins. Co.*, 358 N.E.2d 258, 259-60 (N.Y. 1976) (decedent's intentional act of introducing a fatal heroin overdose into his body was an "accident" covered under an accidental death policy); *Allegany Co-op Ins. Co. v. Kohorst*, 678 N.Y.S.2d 424, 425 (N.Y. App. Div. 1998) ("In deciding whether a loss is the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual and unforeseen . . . . Accidental results can flow from intentional acts. The damage in question may be unintended even though the original act or acts leading to the damage were intentional . . . . There is coverage if the damages alleged in the complaint arise out of a chain of unintended though foreseeable events that occurred after the intentional act.") (citations and internal quotation marks omitted); *Salimbene v. Merchants Mut. Ins. Co.*, 629 N.Y.S.2d 913, 916 (N.Y. App. Div. 1995) ("[W]hen the damages alleged in the complaint 'are the intended result which flows directly and immediately from [the insured's] intentional act, rather than arising out of a

10

chain of unintended though foreseeable events that occurred after the intentional act', there is no

accident, and therefore, no coverage.") (quoting *Mary & Alice Ford Nursing Home Co. v.*

*Fireman's Ins. Co.*, 446 N.Y.S.2d 599, 601 (N.Y. App. Div.), *aff'd*, 439 N.E.2d 883 (1982)).  In

short, in light of the circumstances of this case, the definition of "willful and malicious" injuries

under bankruptcy law and "intentional" injuries under state insurance law appear to be identical,

and USAA has not pointed to the language of the Policies or anything else that suggests the

contrary.[10]

    Accordingly, the Court concludes that it has subject matter jurisdiction over the coverage

claim asserted by Hough against USAA in this adversary proceeding.

## B.    Permissive Abstention and Stay

    Pursuant to 28 U.S.C. § 1334(c)(1), a court may abstain from hearing a proceeding

within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or

respect for State law."  Permissive or discretionary abstention was intended to codify non-

bankruptcy judicial abstention doctrines, *Coker v. Pan Am. World Airways (In re Pan Am.*

*Corp.)*, 950 F.2d 839, 845 (2d Cir. 1991), which recognizes "the virtually unflagging obligation

---

[10]    As Hough argues, he may be precluded from prosecuting the dischargeability action if the state court
determines that the debtor did not act intentionally within the meaning of the policy's exclusion.  (*Plaintiff Dennis
Hough's Response and Opposition to the Motion of Defendant USAA []*, dated Feb. 13, 2012 ("*Hough Opposition*")
at 6 (ECF Doc. # 38); s*ee Hinchey v. Sellers*, 165 N.E.2d 156, 159 (N.Y. 1959) (by virtue of the indemnitor-
indemnitee relationship between the insurer and the insured, a prior determination in coverage action brought by
victim against insurer that driver was driving vehicle without the insured's permission collaterally estopped victim
from arguing in subsequent suit against insured that driver had insured's permission to use vehicle).)  He also posits
that because that the debtor and USAA are in privity, *see D'Arata*, 564 N.E.2d at 664-65; *Bonde v. Gen. Sec. Ins.
Co.*, 285 N.Y.S.2d 675, 678-79 (N.Y. Sup. Ct. 1967), the debtor will be bound in the dischargeability action if the
state court concludes that he acted intentionally in the 3420 Action.  (*Hough Opposition* at 6-7.)  Although USAA
correctly asserts that the dischargeability issue will be determined under bankruptcy law while the coverage issue
will turn on state law, it has failed to explain the difference, and there does not appear to be any under the facts
presented.

of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

The movant bears the burden of establishing that permissive abstention is warranted. *Bickerton v. Bozel S.A. (In re Bozel, S.A.)*, 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010). The factors that inform the Court's discretion include the following:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, No. 94 B 44488(JGH), 1999 WL 294995, at *3 (S.D.N.Y. May 11, 1999) (quoting *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 432 (E.D.N.Y. 1989)); *accord New York City Emps. Ret. Sys. v. Ebbers (In re Worldcom Secs. Litig.)*, 293 B.R. 308, 332 (S.D.N.Y. 2003); *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999). "Not all of these factors need be applied, however." *In re Portrait Corp. of Am.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009) (citing *Cody, Inc. v. County of Orange & Town of Woodbury (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002)). In addition, the "balance [of the factors] should be 'heavily . . . in favor of the exercise of jurisdiction.'" *Id.* (quoting *Eastern Air Lines, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, AFL–CIO (In re Ionosphere Clubs, Inc.)*, 108 B.R. 951, 954 (Bankr. S.D.N.Y. 1989)).

USAA has failed to sustain its burden of showing that permissive abstention is appropriate, and given the Court's unflagging obligation to exercise the jurisdiction given to it, I decline to abstain in the exercise of discretion.  For the reasons already discussed, the coverage issue raised in the 3420 Action could have a dispositive effect on the scope of the debtor's discharge.  Hence, it will affect the administration of this estate and the debtor's future.  And although the coverage issue is controlled by state law, the issue is not a difficult one and coincides with the issue of dischargeability under federal bankruptcy law.  The issue in the 3420 Action is directly related to Margulies' bankruptcy case, and because of this interrelatedness, there is no feasible way to sever the coverage claim from the dischargeability claim to allow the state court to determine the former without also determining the latter.

I do not view Hough's adversary complaint as an attempt to forum shop.  He commenced the 3420 Action against USAA prior to the bankruptcy after he had obtained the Judgment.  Margulies was not a party to the 3420 Action and there is no reason why he should be.  Once bankruptcy ensued, Hough commenced this adversary proceeding because it was the only way to join all of the required parties in a single lawsuit involving two disputes that raised the same legal and factual issues.

Finally, the denial of the abstention motion does not place an undue burden on the Court's docket.

I recognize that several of the factors weigh in favor of abstention.  The 3420 Action has been pending for several years, involves a non-core, third party dispute to which the debtor is not a party (although Hough stands in Margulies' shoes), and the Court's jurisdiction is solely based on 28 U.S.C. § 1334.  Finally, USAA has demanded a jury trial.  This Court cannot conduct a

jury trial unless all parties expressly consent, 28 U.S.C. § 157(e),[11] and USAA's position implies

that it will not consent.   However, these considerations do not override the factors that weigh in

favor of exercising jurisdiction over the coverage dispute between Hough and USAA.

Furthermore, the parties can solve the jury trial issue by asking the District Court to withdraw the

reference and try the coverage dispute and dischargeability action in one trial.   Alternatively, this

Court can try the dischargeability action with all parties present, and the resolution of the

dischargeability action may dispose of any factual issues in the coverage action.

Furthermore, the cases cited by USAA in the *Defendant USAA Casualty Insurance

Company's Motion for Partial Abstention to Stay the Proceeding*, dated Feb. 3, 2012 ("*Stay

Motion*") (ECF Doc. # 34) are distinguishable.   Each involved a situation in which the creditor

brought a pre-petition tort claim against the debtor in state court, the creditor subsequently filed a

dischargeability action in the bankruptcy court based on the same tort, and the bankruptcy court

abstained from deciding the dischargeability matter until the state court first decided the tort

claim.   *See Wallace v. Guretzky*, No. CV-09-0071(SJF), 2009 WL 3171767 (E.D.N.Y. Sept. 29,

2009); *Williams v. Horowitz (In re Horowitz)*, Bankr. No. 8:09-75567-ast, 2010 WL 814103

(Bankr. E.D.N.Y. Mar. 1, 2010); *Fowler & Huntting Co. v. Granoff (In re Granoff)*, 242 B.R.

216 (Bankr. D. Conn. 1999); *Barbaro v. Wider (In re Wider)*, Bankr. No. 09-72993-ast., 2009

WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009); *Roberts v. Goidel (In re Goidel)*, 150 B.R. 885

(Bankr. S.D.N.Y. 1993); *Blackmer v. Richards (In re Richards)*, 59 B.R. 541 (Bankr. N.D.N.Y.

---

[11]      Section 157(e) states:

   If the right to a jury trial applies in a proceeding that may be heard under this section by a
bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to
exercise such jurisdiction by the district court and with the express consent of all the parties.

   The District Court designated the judges of this Court to conduct jury trials by order dated Dec. 7, 1994.
*See General Order M-139* (Bankr. S.D.N.Y.).

1986).  Here, the debtor is not a party to the 3420 Action, and the underlying tort issue has been

resolved by the Judgment.

The refusal to abstain also disposes of USAA's motion to stay this adversary proceeding

pending the disposition of the 3420 Action.  USAA was concerned, in part, that the Appellate

Division might reverse the *May 2011 Order* and conclude that USAA was collaterally estopped

from litigating whether Margulies acted intentionally, raising the chance that it could prevail in

the adversary proceeding but lose in the 3420 Action.  (*Stay Motion* at ¶ 3.)  The Appellate

Division unanimously affirmed the *May 2011 Order*, rendering this argument moot.  However,

USAA also contends that it should not have to defend the same action brought by Hough in two

different courts, and faces the possibility of inconsistent and adverse results because the

standards for "willful and malicious" injuries and "intentional" injuries may differ.  (*Id.* at ¶ 2.)

USAA's concern about fighting the same battle in a two front war is a reasonable one.

Hough cannot prosecute the same dispute in two different courts, particularly since inconsistent

determinations of the same issue are always possible.  I have interpreted the initiation of Hough's

adversary proceeding as his determination to prosecute the coverage issue here rather than in

state court.  Accordingly, while the Court will deny the stay for the same principal reason that it

refused to abstain in the exercise of discretion—a state court ruling on the coverage issue could

collaterally estop Margulies (and Hough) in the dischargeability suit—USAA may renew its stay

motion if Hough does not take steps to discontinue the 3420 Action without prejudice, or

succeed in placing it on the state court's suspense calendar, or its equivalent.

C.    **Failure to State a Claim**

The final prong of USAA's original motion challenged the legal sufficiency of Hough's claim and requested a more definite statement.  USAA objects to alternative claims for inconsistent relief stated in a single count and contends that Hough failed to state a claim against USAA because the Adversary Complaint did not mention § 3420 of the New York Insurance Law and the *ad damnum* clause contains contradictory statements relating to the relief sought against USAA.

Rule 8(d)(2) of the Federal Rules of Civil Procedure provides:

A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

The *Adversary Complaint* alleges that Margulies struck Hough with his vehicle causing him serious injury, Hough sued Margulies, USAA failed to defend that suit, Hough recovered the Judgment, more than thirty days passed, and under New York Insurance Law § 3420, USAA is liable to Hough up to the limits of the Policies.  Thus, Hough specifically invoked Insurance Law § 3420 as the basis of USAA's liability.  Furthermore, USAA has argued that Hough has asserted the same claims against it in the 3420 Action and this adversary proceeding.  Accordingly, the *Adversary Complaint* states a claim for relief against USAA, and under Rule 8(d)(2), the single claim for relief is legally sufficient.

In addition, although paragraph 38 and one portion of the *ad damnum* clause demand a judgment against USAA in the amount of the Judgment, paragraph 28 acknowledges that under New York Insurance Law § 3420 the amount of any recovery is subject to the limitations in the Policies.  Moreover, paragraph 39 alleges that Hough has been damaged in the amount of the

16

Judgment up to the limits in the Policies.  The Court must construe pleadings so as to do justice, FED. R. CIV. P. 8(e), and I construe Hough's alternative claim against USAA—as USAA does—to recover the Judgment up to the limits of the Policies based upon the unintentional injuries caused by Margulies when he struck Hough with his vehicle.  Accordingly, the *Adversary Complaint* states a claim for relief against USAA.

The parties are directed to settle an order consistent with this decision.

Dated: New York, New York
       August 13, 2012

                                    /s/  *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge