UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                              :
                                                    :
JOSHUA SIMON MARGULIES,                             :     Chapter 7
                                                    :     Case No. 10-14012 (SMB)
            Debtor.                                 :
------------------------------------------------------X
DENNIS HOUGH,                                       :
                                                    :
                                                    :
            Plaintiff,                              :
                                                    :
            – against –                             :     Adv. Proc. No. 10-04050
                                                    :
JOSHUA SIMON MARGULIES and                          :
USAA CASUALTY INSURANCE                             :
COMPANY,                                            :
                                                    :
            Defendants.                             :
------------------------------------------------------X

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A P P E A R A N C E S:**

STANLEY K. SHAPIRO, ESQ.
225 Broadway, Suite 1803
New York, New York 10007

*Attorney for Plaintiff Dennis Hough*

OLSHAN GRUNDMAN FROME ROSENZWEIG
   & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022

     Fredrick J. Levy, Esq.
     Howard J. Smith, Esq.
          Of Counsel

       – and –

ROBERT M. SPADARO, ESQ.
17 Battery Place, Suite 1103
New York, New York 10004

*Attorneys for Defendant USAA Casualty
Insurance Company*

SHAFFERMAN & FELDMAN LLP
286 Madison Avenue, Suite 502
New York, New York 10017

    Joel M. Shafferman, Esq.
        Of Counsel

*Attorneys for Defendant Joshua Simon Margulies*

**STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

    This litigation involves two claims that the plaintiff, Dennis Hough, admits are mutually exclusive. Hough was the victim of a traffic incident when a car driven by the debtor-defendant, Joshua Margulies, struck and injured him. Prior to the bankruptcy, Hough recovered a $4.8 million default judgment against Margulies that remains unsatisfied. Hough thereafter brought a direct action against Margulies' liability insurer, the defendant USAA Casualty Insurance Company ("USAA"), pursuant to N.Y. INS. LAW § 3420 (McKinney Supp. 2013).

    After Margulies filed this chapter 7 bankruptcy case, Hough commenced this adversary proceeding. He contended that his judgment debt should be declared non-dischargeable because Margulies acted willfully and maliciously, 11 U.S.C. § 523(a)(6), but if he did not, then Hough is entitled to a judgment against USAA pursuant to N.Y. INS. LAW. § 3420 up to the policy limits.

    The Court conducted a trial at which Hough, Margulies and one other witness testified. It now concludes that Hough is entitled to judgment declaring his judgment debt non-dischargeable and USAA is entitled to judgment dismissing the claim asserted against it by Hough.

## BACKGROUND

The ten year history of litigation among the parties is discussed in *Hough v. Margulies (In re Margulies)*, 476 B.R. 393 (Bankr. S.D.N.Y. 2012) ("*Margulies I*") and *Hough v. Margulies (In re Margulies)*, Adv. No. 10-04050, 2012 WL 3782535 (Bankr. S.D.N.Y. Aug. 31, 2012).

At the relevant time, Hough was working as a flagman[1] directing traffic on Avenue of the Americas ("Sixth Avenue") in Manhattan, (Tr. at 31-32),[2] a one-way, northbound six lane roadway, where five of the six lanes were open to traffic at the time of the incident. (Tr. at 34, 46.) His duties related to a construction excavation site on the east side of Sixth Avenue between 22nd and 23rd Streets. (Tr. at 31-34.) Hough's job was to stop traffic as necessary on Sixth Avenue to allow trucks to exit and enter the site approximately at mid-block. (Tr. at 40, 42-43, 44-45, 82.)

At approximately 10:30 a.m. on August 3, 2000, Margulies was driving north on Sixth Avenue accompanied by a passenger, Kristopher Zdyb. (Tr. at 158-59.) Margulies and Zdyb were heading to an important business meeting with former Governor Mario Cuomo to discuss the possibility of Governor Cuomo investing in and/or serving on the board of their startup company. (Tr. at 158-59.) They were already late for the meeting. (Tr. at 158.)

Margulies stopped at a red traffic light at 22nd Street. (Tr. at 206.) When the light at 22nd Street turned green, he proceeded north. He and Zdyb were already complaining about

---

[1] Both Hough and USAA contend that Hough was a "flagperson" within the meaning of N.Y VEH. & TRAF. LAW § 1102 (McKinney 2011), which states that "[n]o person shall fail or refuse to comply with any lawful order or direction of any police officer or flagperson or other person duly empowered to regulate traffic." However, neither party offered evidence to prove that he met the definition of "flagperson" under § 115-b of that law.

[2] "Tr." refers to the trial transcript docketed at ECF Doc. # 74.

how late they were when they saw a flagman (Hough) come out. They could not see any trucks, and were concerned that he was going to stop traffic. (Tr. at 161.) Margulies' car was the first in line stopped south of the excavation site opening between 22nd and 23rd Streets, in the middle lane. (Tr. at 44, 80, 208.)

While he was stopped, one or two trucks exited from the construction site onto Sixth Avenue. (Tr. at 163, 180, 208-09.) Hough continued holding traffic even after it appeared to Margulies and Zdyb that no more trucks were entering or exiting the site. (Tr. at 185-86.) Cars were scooting around Margulies on the left, (Tr. at 162), and Margulies and Zdyb became increasingly impatient as they watched the traffic light at 23rd Street pass through two full cycles during which time no trucks went into or came out of the site. (Tr. at 209.)

At some point, Hough and Margulies made eye contact. (Tr. at 166, 184.) Margulies started tapping or pointing to his watch for Hough's benefit. (Tr. at 166, 211.) He gestured that there didn't seem to be any reason for holding up his car, and indicated to Hough that he intended to proceed when the light changed. (Tr. at 130, 211-12.) When Hough broke eye contact, Margulies revved his engine so Hough got the message that he intended to move once the light turned green regardless of whether Hough wanted him to stay stopped. (Tr. at 140-41, 213-14, 239, 246, 250.) Hough could not see the light at 23rd Street because he was looking south and east. (Tr. at 55-57.)

When the traffic light at 23rd Street changed, Margulies took his foot off of the brake, and his car rolled forward. (Tr. at 215.) As he rolled forward, Hough, who had been in the lane to his immediate right, backed into Margulies' lane in front of Margulies' car, about a car length away, (Tr. at 49, 168, 237-38), and turned his attention to Margulies' car. (Tr. at 217.)

Margulies understood that Hough wanted him to stop, but intended to disregard Hough and proceed north. (Tr. at 140-41.)

Margulies tried to veer to the left and drive around Hough, but traffic heading north in the adjacent left lane prevented him from doing so. (Tr. at 217.) He continued to move forward expecting Hough to get out of his way. (Tr. at 217, 239.) Hough held his ground, in Margulies' view, simply to annoy him. (Tr. at 243.) Margulies never applied his brake, and hit Hough. (Tr. at 243.)

At this point, the stories diverge. Hough claimed that he was hit on his right leg, and fearful of being run over, grabbed on to the top of the hood near the windshield wipers. (Tr. at 53-54, 104.) Margulies continued moving forward for about a quarter of a block, jerking the car to the left and right, trying to dislodge him. (Tr. at 105-08.) Margulies then hit the brakes and sent Hough flying off the car ultimately landing on his shoulders. (Tr. at 108.) Zdyb and Margulies saw things differently. According to Zdyb, the car only "touched" Hough and he never went to the ground. (Tr. at 186.) Margulies saw him fall, get up, and thinking he was unharmed, left the scene and continued up Sixth Avenue to his meeting. (Tr. at 219; *see* 220-21.)

I do not credit Hough's version which implies far greater immediate injuries than the facts suggest.[3] Hough reported the incident to his supervisor and the police, and reported back to work either the same day or the next day. (*See* Tr. 58-59; 114.) He did not visit an emergency

---

[3] This conclusion is not inconsistent with, nor does it challenge, the $4.8 million default judgment that Hough obtained against Margulies. Rather, the evidence or lack of evidence alluded to in the text relates solely to Hough's credibility regarding whether Margulies acted willfully and maliciously—trying to shake him off his moving car— following the collision. (*See* Tr. at 142-43 (denying Margulies' motion for judgment on partial findings).)

room until August 19, 2000 on the advice of his personal physician. (*See* Supplemental Ex. 1; Tr. at 286.) Four days later, he visited an orthopedist. According to the medical report, Hough complained that he was struck on his right knee and was thrown to the ground, but did not suffer any head injuries and returned to work the next day. (Supplemental Ex. 2.) These descriptions are not consistent with Hough's testimony that he hung onto the hood of a moving vehicle for dear life as Margulies jerked the car left and right, finally hitting the brakes and throwing him off. Further, Margulies' version of what happened to Hough is more credible than Zdyb's account. Margulies distinctly saw Hough go to the ground while it appears that Zdyb may have covered his eyes at the last moment. (*See* Tr. at 193-94.) Moreover, Margulies was more credible than Zdyb.

As noted, Margulies drove off without stopping. He eventually pled guilty to misdemeanor assault in the third degree under N.Y. PENAL LAW § 120.00(2) (McKinney 2009). A person is guilty of misdemeanor assault in the third degree when he "recklessly causes physical injury to another person." N.Y. PENAL § 120.00(2). Under N.Y. PENAL LAW §15.05(3),

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

## DISCUSSION

### A.    The Dischargeability Claim

Hough contends that his injuries resulted from Margulies' willful and malicious acts, and his judgment should be declared non-dischargeable. Bankruptcy Code § 523(a)(6) provides that the bankruptcy discharge under 11 U.S.C. § 727 does not discharge a debt "for willful and

malicious injury by the debtor to another entity . . . ." The creditor bears the burden of proving that the debtor acted willfully and maliciously by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290-91 (1991); *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 485 (S.D.N.Y. 2003), *aff'd*, 94 F. App'x 24 (2d Cir. 2004).

### 1. Willfulness

To prove that Margulies acted willfully under 11 U.S.C. § 523(a)(6), Hough must demonstrate that Margulies deliberately intended to injure Hough and not merely that Margulies committed an intentional act that unintentionally inflicted injuries on Hough. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A person intends to injure another when he "desires to cause consequences of his act, or . . . he believes that the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1965). Accordingly, to satisfy the "willful" element of Bankruptcy Code § 523(a)(6), the plaintiff must prove by a preponderance of the evidence that the debtor actually intended to injure the victim, or engaged in conduct that was substantially certain to cause injury. *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012); *Morris v. Brown (In re Brown)*, 489 F. App'x 890, 895 (6th Cir. 2012); *Guerra & Moore Ltd. v. Cantu (In re Cantu)*, 389 F. App'x 342, 344-45 (5th Cir. 2010); *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008); *In re Granoff*, 250 F. App'x 494, 495 (3d Cir. 2007); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004); *see Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012).[4]

---

[4] In *Sanger v. Busch (In re Busch)*, 311 B.R. 657 (Bankr. N.D.N.Y. 2004), the court described the "substantial certainty" test as the minority view, and rejected it in favor of a stricter actual intent test which it

Hough proved by a preponderance of the evidence that Margulies acted willfully. Margulies did not have the subjective intent to injure Hough, but his conduct was substantially certain to cause the injuries that occurred. By his own admission, Margulies drove forward directly at Hough expecting him to get out of the way. Frustrated by the delay, particularly in light of his important business meeting with Governor Cuomo, Margulies intended to proceed and he let Hough know it. He never applied the brake, and inevitably, his car hit Hough.

In essence, he and Hough engaged in a game of "chicken." Both guessed wrong but Hough's conduct is not on trial; Margulies' conduct is. In response to the question what he thought would happen if Hough did not get out of the way, Margulies responded, "[f]rankly if he hadn't moved out of the way I would think that what happened is what happened . . . ." (Tr. at 257.) In short, Margulies drove at Hough and it was substantially certain he would injure Hough if Hough did not get out of the way of his car. Margulies therefore acted willfully.

### 2.    Malice

In order to establish malice, Hough had to prove that Margulies acted wrongfully and "without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Navistar*

---

concluded was demanded by *Kawaauhau*. *Id.* at 669-70. *Kawaauhau* was concerned with the distinction between reckless and negligent conduct on the one hand, and intentional conduct on the other. *See Kawaauhau*, 523 U.S. at 59, 64. The Supreme Court equated the willfulness element under 11 U.S.C. § 523(a)(6) with the common law concept of intentional tort, and looked to the Restatement (Second) of Torts for the definition of "intent." *See id.* at 61-62. As the text shows, the Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits have interpreted *Kawaauhau* to permit a finding of willfulness based on substantial certainty that harm will follow. The Court has not located any Circuit-level decisions reaching an opposite conclusion. It does not appear that the Second Circuit has decided this issue, but the bankruptcy courts in this district have read *Kawaauhau* to require either an intent to injure or conduct that is substantially certain to injure. *E.g., Strauss v. Strauss (In re Strauss)*, Adv. No. 06-8229, 2006 WL 2583645, at *3 (Bankr. S.D.N.Y. July 21, 2006) ("Substantial certainty on the part of the debtor that his actions will result in an injury to the plaintiff's property is enough for the Court to find that the debtor acted maliciously within the context of Section 523(a)(6)."); *Citik Ka Wah Bank Ltd. New York Branch v. Wong (In re Wong)*, 291 B.R. 266, 280 (Bankr. S.D.N.Y. 2003) ("An act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result."); *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) ("'Willful,' as used in § 523(a)(6) . . . includes conduct that the actor is substantially certain will cause injury.").

*Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996); *accord Ball*, 451 F.3d at 69. Malice is implied when "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994) (internal quotation marks omitted), *aff'd*, 94 F.3d 84 (2d Cir. 1996). As Judge Posner put it:

> [W]e imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act. To allow him to shirk liability by discharging his judgment debt in those circumstances would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law.

*Jendusa-Nicolai*, 677 F.3d at 324.

Hough proved by a preponderance of the evidence that Margulies acted maliciously. Margulies obviously had no justification or excuse for driving into him, and hasn't suggested any. In fact, his guilty plea to assault in the third degree conceded that he acted "recklessly," a culpable mental state involving a conscious disregard of "a substantial and unjustifiable risk" and conduct constituting "a gross deviation from the standard of conduct that a reasonable person would observe in the situation." PENAL § 15.05(3).[5] Furthermore, driving at a flagman (or any pedestrian) to force him out of the way is "contrary to commonly accepted duties in the ordinary relationships among people." *See Navistar Fin. Corp.*, 167 B.R. at 33 (internal quotation marks and citation omitted), *aff'd*, 94 F.3d 84; *accord Neshewat*, 290 B.R. at 485. Margulies conceded that it was substantially certain that he would hit and injure Hough if Hough didn't get out of his

---

[5]  In *Kawaauhau*, the Supreme Court ruled that reckless or negligent conduct did not satisfy the requirement for willfulness under 11 U.S.C. § 523(a)(6). The Court did not discuss the term "malicious" or conclude that a "reckless" mental state under a penal law was inconsistent with the concept of malice under 11 U.S.C. § 523(a)(6).

way. Margulies' expectation that Hough would blink first hardly excused his act of putting Hough at such risk. Allowing Margulies to discharge Hough's judgment "would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law." *Jendusa-Nicolai*, 677 F.3d at 324.

Accordingly, the Court concludes that Hough's judgment is excepted from discharge under 11 U.S.C. § 523(a)(6).

**B.     The Coverage Claim**

As discussed in *Margulies I*, Hough also seeks to recover his unsatisfied judgment under Margulies' liability insurance policy in accordance with § 3420 of New York Insurance Law.[6] Hough stands in Margulies' shoes, and can only recover from USAA to the extent that Margulies' insurance covered his own liability. *See D'Arata v. N. Y. Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 637 (N.Y. 1990) (In a direct action brought under § 3420(b)(1), the plaintiff/victim "'stands in the shoes' of the insured and can have no greater rights than the insured").

Margulies was the named insured under a $300,000 automobile liability policy (the "Auto Policy"), (Plaintiff's Trial Exhibit ("PX") 5), and a $1,000,000 Personal Umbrella Policy (the "Umbrella Policy") (PX 6) (together the "Policies") which were in force on August 3, 2000. The Policies covered liability resulting from an "accident." The Auto Policy stated in Part A, entitled "LIABILITY COVERAGE," under the section headed "INSURING AGREEMENT":

> [USAA] will pay damages for *BI* [Bodily Injury] or *PD* [Property Damage] for which any *covered person* becomes legally responsible because of an auto accident.

---

[6]     Hough and USAA have expressly consented to this Court's authority to enter a final judgment.

(PX 5 at p. 4 of 23 (emphasis in original).)  The Umbrella Policy provided, under the heading of "LIABILITY COVERAGE," that:

> [USAA] will pay for damages an *insured* becomes legally obligated to pay in excess of the *retained limit*. This obligation must arise from an *occurrence* not excluded by this policy.

(PX 6, at p. 2 of 5 (emphasis in original).)  The Umbrella Policy defined "occurrence" to include:

> a. An accident . . . which results, during the policy period, in *bodily injury* or *property damage*.
>
> b. An event . . . proximately caused by an act or omission of any *insured*, which results, during the policy period, in *personal injury*, neither expected nor intended from the standpoint of the *insured*.

(PX 6, at DEFINITIONS, ¶ 7 (emphasis in original).)

In addition, the Policies expressly excluded liability coverage for personal injury and property damage resulting from an intentional act.  The Auto Policy did not cover an insured person "[w]ho intentionally acts or directs to cause, or with the reasonable expectation of causing *BI* [Bodily Injury] or *PD* [Property Damage]."  (PX 5, at Part A, EXCLUSIONS, ¶ A.1.)  The Umbrella Policy excluded liability coverage for bodily injury or property damage "caused by the intentional or purposeful acts of any *insured*, including conduct that would reasonably be expected to result in *bodily injury* to any person or *property damage* to any property."  (PX 6, at EXCLUSIONS, ¶ 9 (emphasis in original).)

In *Margulies I*, the Court explored the definitions of "willful and malicious" under 11 U.S.C. § 523(a)(6) and "intentional" acts under the law relating to insurance exclusions and concluded that they appeared to be identical.  *Margulies I*, 476 B.R. at 401.  This conclusion was consistent with the principal that one cannot insure himself against liability for his intentional wrongdoing.  *See Messersmith v. Am. Fid. Co.*, 133 N.E. 432, 433 (N.Y. 1921) (Cardozo, J.) (An

insurance liability policy cannot be read to cover willful injuries because "the fundamental principle that no one shall be permitted to take advantage of his own wrong would import the limitation"). Thus, Hough's proof that Margulies acted willfully and maliciously also demonstrated that he acted intentionally within the meaning of insurance law and was not entitled to coverage under his policies.[7]

The Policies were received into evidence at the trial, and their terms confirm that "willful and malicious" acts were not covered "accidents" and fell under the exclusion for intentional acts.[8] The Policies did not define the term "accident," but an "accident" (or an "occurrence") connotes a "fortuitous event" that is, "to a substantial extent beyond the control of either party." *Consolidated Consol. Edison*, 774 N.E.2d at 692 (quoting N.Y. INS. LAW § 1101(a)(2)). "Broadly stated, the fortuity doctrine holds that insurance is not available for losses that the policy holder knows of, planned, intended, or is aware are substantially certain to occur." *Nat'l Union Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) (internal quotation marks and citation omitted).

The Court has already concluded that Margulies' acts were substantially certain to cause injury to Hough. Furthermore, driving into Hough was not beyond Margulies's control; he could have remained stopped or applied his brakes as he rolled forward. Instead, he proceeded even

---

[7] Margulies has hypothesized that the debt might be dischargeable *and* not covered by the Policies if Margulies acted willfully but not maliciously. It is unnecessary to consider this argument because the Court has concluded that Margulies acted both willfully and maliciously.

[8] Under New York law, the insured (here, Hough) has the burden of establishing coverage, and the insurer (USAA) has the burden of proving that an exclusion applies to defeat coverage. *Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 774 N.E.2d 687, 690 (N.Y. 2002). USAA argues that Hough must prove that his injuries resulted from an "accident." Hough contends that USAA has the burden of proof because the Appellate Division characterized the coverage issue as a defense and concluded that the default judgment obtained by Hough against Margulies did not prevent USAA from raising the intentional nature of Margulies' conduct in the coverage action. *See Margulies I*, 476 B.R. at 397. The dispute is immaterial because the evidence leads to only one conclusion.

though Hough stood in his path, hoping that Hough would step out of his way. For the same reason, the Policies excluded coverage because Margulies acted with the "reasonable expectation" that he would cause the injury that resulted. In short, even in the absence of a subjective intent to cause injury, driving forward toward Hough who was only a few feet away was not an "accident" covered by the Policies, and constituted an intentional act within the Policies' exclusions. *See Progressive N. Ins. Co. v. Rafferty*, 793 N.Y.S. 2d 618, 620 (N.Y. App. Div. 2005).

Accordingly, Hough's coverage claim against USAA is dismissed. The foregoing constitutes the Court's finding of facts and conclusions of law. The Court has considered the parties' remaining arguments and concludes that they lack merit. Settle judgment on notice.

Dated: New York, New York
May 16, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge