**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:                                            :
                                                  :
JOSHUA SIMON MARGULIES,                           :        Chapter 7
                                                  :        Case No. 10-14012 (SMB)
                                                  :
                      Debtor.                     :
-----------------------------------------------------------------X
                                                  :
DENNIS HOUGH                                      :
                                                  :
                      Plaintiff,                  :
                                                  :        Adv. Pro. No. 10-04050 (SMB)
                                                  :
        – against –                               :
                                                  :
JOSHUA SIMON MARGULIES and                        :
USAA CASUALTY INSURANCE COMPANY                   :
                                                  :
                      Defendants.                 :
-----------------------------------------------------------------X


**POST-REMAND MEMORANDUM DECISION REGARDING**
**DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(6) AND**
**INDEMNIFICATION UNDER NEW YORK INSURANCE LAW § 3420**

**A P P E A R A N C E S :**

THE LAW OFFICES OF STANLEY K. SHAPIRO
225 Broadway, Suite 1803
New York, New York 10007

        Stanley K. Shapiro, Esq.
            Of Counsel

            -and-

DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110

        Matthew N. Kane, Esq.
        Brendan T. St. Amant, Esq.
            Of Counsel

*Attorneys for Plaintiff Dennis Hough*

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022

     Frederick J. Levy, Esq.
     Howard J. Smith, Esq.
     Peter M. Sartorius, Esq.
       Of Counsel

     -and-

ROBERT M. SPADARO, ESQ.
80 Grymes Hill Road
Staten Island, New York 10301

     Robert M. Spadaro, Esq.
       Of Counsel

*Attorneys for Defendant USAA Casualty Insurance Company*

JOSHUA S. MARGULIES, ESQ.
88 Walnut Street
Lynbrook, New York 11563

*Plaintiff Pro se*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

     This matter comes before the Court on remand from the District Court, *see Margulies v. Hough* (*In re Margulies*), 517 B.R. 441 (S.D.N.Y. 2014) ("*District Court Decision*"), which vacated this Court's post-trial findings of fact and conclusions of law in *Hough v. Margulies* (*In re Margulies*), Adv. P. No. 10-04050 (SMB), 2013 WL 2149610 (Bankr. S.D.N.Y. May 16, 2013) ("*Bankruptcy Court Decision*").  The District Court instructed me to make further factual findings in connection with plaintiff Dennis Hough's claims to determine the dischargeability of his judgment against the debtor, Joshua S. Margulies, pursuant to 11 U.S.C. § 523(a)(6) and for indemnification from Margulies' insurer, USAA Casualty Insurance Company ("USAA").  For the reasons that follow, the Court finds that Margulies acted willfully and maliciously, and accordingly, his debt to Hough is not dischargeable.  The Court further finds that the incident

2

that gave rise to Hough's injury was not an accident within the meaning of New York's

insurance law, and hence, is not covered by the USAA policies issued to Margulies.

## BACKGROUND

Prior decisions of this Court and the District Court have recounted in detail the extensive

litigation history among the parties, *District Court Decision*, 517 B.R. at 447-50; *Hough v.*

*Margulies* (*In re Margulies*), 476 B.R. 393, 396-98 (Bankr. S.D.N.Y. 2012), *reconsideration*

*denied*, Adv. P. No. 10-04050 (SMB), 2012 WL 3782535 (Bankr. S.D.N.Y. Aug. 31, 2012), and

the facts giving rise to Hough's claim against Margulies. *District Court Decision*, 517 B.R. at

445-447; *Bankruptcy Court Decision*, 2013 WL 2149610, at *1-3. I assume familiarity with

those decisions, and highlight the facts pertinent to the issues on remand.

On August 3, 2000, Margulies was driving north on Manhattan's Sixth Avenue, a one-

way northbound road with six lanes, five of which were open to traffic. Kristopher Zdyb was a

passenger in the car. They were headed to an important business meeting with former New York

Governor Mario Cuomo, and they were running late. At the time, Hough was working as a

flagman tasked with stopping traffic on Sixth Avenue to allow vehicles to enter and exit a

construction site midway between 22nd and 23rd Streets.

Margulies was stopped by Hough in the middle lane of Sixth Avenue, his car the first one

in line. While stopped, one or two trucks exited the construction site, but Hough continued to

hold traffic even after it appeared that no more trucks were entering or exiting the site.

Margulies and Zdyb became increasingly impatient as they watched the traffic light at 23rd

Street pass through two full cycles without seeing any trucks enter or leave the site.

3

Margulies made eye contact with Hough and communicated his intention to move forward when the light turned green by tapping or pointing to his watch and revving his engine. He testified that he intended to convey that he planned to move forward regardless of whether Hough wanted him to stay put. When the light turned green, Margulies took his foot off the brakes and his car rolled slowly at a speed of one to two miles per hour, or roughly 1.5 to 3 feet per second. When the car started rolling forward Hough was not in Margulies's lane, but Hough backed into his lane when the car was about a car-length away from Hough.

Margulies tried to veer to the left and drive around Hough but traffic in that lane prevented him from doing so. Margulies continued to move forward expecting Hough to get out of his way but Hough held his ground, in Margulies' view, "simply to annoy" him. Margulies continued to roll forward toward Hough, and did not apply his brakes until *after* he hit Hough. Seeing Hough fall, get up and thinking he was unharmed, Margulies continued up Sixth Avenue to his meeting.

Margulies subsequently pled guilty to misdemeanor assault in the third degree under N.Y. PENAL LAW § 120.00(2) (McKinney 2015). A person is guilty of misdemeanor assault in the third degree when he "recklessly causes physical injury to another person." N.Y. PENAL LAW § 120.00(2). Under N.Y. PENAL LAW § 15.05(3),

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Prior to the commencement of this bankruptcy case, Hough sued Margulies for negligence.  USAA failed to defend the action and Hough obtained a $4.8 million default judgment (the "Judgment") against Margulies.  Hough subsequently brought a direct action against USAA to collect the Judgment pursuant to N.Y. INS. LAW § 3420 (McKinney 2015).

After Margulies filed his chapter 7 bankruptcy petition, Hough initiated this adversary proceeding contending that (1) the Judgment was not dischargeable under 11 U.S.C. § 523(a)(6) because Margulies had acted willfully and maliciously (the "Dischargeability Claim"), or alternatively, (2) USAA was liable for the Judgment up to the limits of the insurance policies pursuant to N.Y. INS. LAW § 3420 because the incident was an "accident" (the "§ 3420 Claim").  Following trial, the Court found that the Judgment was not dischargeable because Margulies had acted willfully and maliciously.  *Bankruptcy Court Decision*, 2013 WL 2149610, at *3-5.  In addition, his acts were intentional within the meaning of New York insurance law.  Thus, the incident was not a covered "accident," and coverage was expressly excluded under the USAA insurance policies.  *Id*. at *5-6.

The District Court vacated the Bankruptcy Court's decision and remanded the case for further factual findings.  In connection with the Dischargeability Claim, District Judge Failla instructed the Court to determine "(i) whether Margulies was substantially certain that Hough's injuries would occur, and if not, (ii) whether that finding impacts the Bankruptcy Court's determination that Margulies's actions were malicious; as well as (iii) whether Margulies's actions were undertaken for the purpose of economic benefit."  *District Court Decision*, 517 B.R. at 462.  With respect to the § 3420 Claim, the District Court directed the Court to decide "(i) whether Margulies's intent and knowledge establish that Hough's injuries were the sort that

5

would flow 'directly and immediately' from Margulies's actions; and (ii) whether the Incident

was accidental, that is 'unusual, unforeseen, or unexpected' from Margulies's perspective." *Id.*

Upon remand, Margulies, Hough, and USAA submitted briefs, including proposed

factual findings, going to the questions raised by the *District Court Decision*. *See Brief of*

*Dennis Hough to Address Issues on Remand*, dated April 28, 2015 ("*Hough Brief*") (ECF Doc. #

156[1]); *Plaintiff's Proposed Further Findings of Fact to Address Issues on Remand*, dated April

28, 2015 (ECF Doc. # 157); *Supplemental Memorandum of Law and Supplemental Proposed*

*Findings of Fact on Remand of USAA*, dated May 29, 2015 ("*USAA Brief*") (ECF Doc. # 160);

*Brief on Remand of Joshua Simon Margulies* ("*Margulies Brief*") (ECF Doc. # 162).  Margulies,

who is a lawyer, (Tr.[2] at 201:11-19), argued, among other things, that Hough had abandoned the

Dischargeability Claim.  (*Margulies Brief* at 1-6.)  While it is clear that Hough would prefer a

judgment against USAA on his § 3420 Claim at the expense of his Dischargeability Claim,

Hough continues to press the Dischargeability Claim as a fall back.  (*See Hough Brief* at 19-20.)

He has not, therefore, abandoned the Dischargeability Claim.

---

[1]       "ECF Doc. #" refers to documents electronically filed in this adversary proceeding.

[2]       "Tr. at __" refers to the December 14, 2012 trial transcript.

6

## DISCUSSION

### A.    Dischargeability Claim

Section 523(a)(6) provides that a "discharge under section 727 . . . does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6).  "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied."  *District Court Decision*, 517 B.R. at 451 (quoting *Rupert v. Krautheimer* (*In re Krautheimer*), 241 B.R. 330, 341 (Bankr. S.D.N.Y. 1999)).  The creditor bears the burden of proving both elements by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 290-91 (1991).

### 1.    Willfulness

To prove that a debtor acted willfully under 11 U.S.C. § 523(a)(6), the plaintiff must demonstrate that the debtor deliberately intended to injure the plaintiff and not merely that the debtor committed an intentional act that unintentionally inflicted injuries on the plaintiff.  *See Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998); *District Court Decision*, 517 B.R. at 452.  A person intends to injure another when he "desires to cause consequences of his act, or . . . he believes that the consequences are substantially certain to result from it."  RESTATEMENT (SECOND) OF TORTS § 8A (1965).  Although *Geiger* did not mention the substantial certainty test discussed in the Restatement, the District Court concluded that the Restatement standard applies to claims under 11 U.S.C. § 523(a)(6), and a plaintiff may demonstrate the debtor's willfulness by proving that he intended to cause the plaintiff's injury or was substantially certain that the injury would occur.  *District Court Decision*, 517 B.R. at 452.

7

The District Court next turned to whether the debtor's substantial certainty must be judged subjectively or objectively. After extensively reviewing the law and noting a conflict among several Circuits as to which the Second Circuit had not spoken, the District Court concluded that a subjective standard applied. *Id.* at 453. The District Court ruled that this Court had conflated the subjective and objective standards, and remanded to this Court to determine Margulies' willfulness under the subjective standard. *Id.* at 454, 462.

Upon remand, I conclude that Hough satisfied his burden of proving that Margulies was substantially certain that his actions would result in injury to Hough. A comment to the section of the Restatement cited in *Geiger* explains a sliding scale of *scienter* that distinguishes substantial certainty from ordinary negligence:

> If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.... As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.... All three have their important place in the law of torts, but the liability attached to them will differ.

RESTATEMENT (SECOND) OF TORTS § 8A, cmt. *b*; *accord District Court Decision*, 517 B.R. at 452.

Here, Margulies passed through each successive state of consciousness but in reverse order culminating in his substantial certainty that he would injure Hough. After the light at 23rd Street went through two cycles without any truck activity at the entrance to the construction site, Margulies grew more impatient. Margulies and Hough made eye contact, and Margulies indicated that he intended to proceed. In fact, Margulies testified at trial that he intended to

proceed once the light at 23rd Street changed even if Hough wanted him to remain in place.  (Tr. at 140:19-141:7, 239:8-10.)  When Hough broke eye contact, Margulies revved his engine to make sure Hough got his message.  (Tr. at 213:17-214:2.)  He took his foot off the brakes and began to roll forward while Hough was in the adjacent lane.

Margulies continued to roll forward even after Hough backed into his lane and stood directly in Margulies' path one car length away.  Margulies tried to veer around Hough on the left, but traffic in that lane prevented him from doing so.  Margulies still thought that Hough was standing his ground to annoy him but would get out of his way, and Margulies continued to roll forward directly toward Hough at the rate of one to two miles per hour.  This was reckless.

Eventually, Margulies understood that Hough had no means of escape.  (Tr. at 218:7-9 ("Mr. Hough started to move out of the path of the car, but I -- there was just -- there was a point at which from what I gathered, from what I could see there was a point at which he couldn't just step to the side anymore").)  Margulies knew that Hough could not get out of the way, but he continued to roll forward anyway.  This was not a situation where Hough suddenly stepped in front of Margulies car and Margulies was moving too fast to react.  Instead, he reached the point where he was substantially certain that he would hit Hough and injure him, but did not apply his brakes until *after* he struck Hough and knocked him down.  When he saw him get up apparently without injury, he drove away.

Although Margulies hoped Hough would give ground, he understood the consequences of his conduct.  After testifying that he continued to roll forward thinking Hough would move out of the way, the following colloquy took place:

9

| | |
|---|---|
| THE COURT: | What did you think would happen if he didn't move out of the way? |
| THE WITNESS: | Frankly if he hadn't moved out of the way I would think that what happened is what happened, and I know we're not allowed to discuss the civil judgment, but from having looked at everything he wasn't hurt very much. |
| THE COURT: | Well that's -- that's after the fact. |
| THE WITNESS: | No. I understand, Your Honor, at the speed that I was -- what I'm saying at the speed that I was going to my mind – I'm not saying -- and please, I'm not defending that I continued to move the car, but I was very certain he'd move out of the way, and if I had stopped and somebody said gee, what would happen if he moved out of – didn't move out of the way all of the way I would think that it would be exactly what did happen was the – which was that there was a slight contact and he stumbled and fell. |

(Tr. at 257:14-58:6.)

Margulies didn't intend to injure Hough, and was "very certain" he would move out of the way. But there came a point when his lack of an intent to injure Hough gave way to a substantial certainty that he would. He continued to roll forward even after Hough could no longer escape and did not apply the brakes until after he hit Hough. Accordingly, he willfully injured Hough.

### 2.    Malice

Hough also had the burden to prove that Margulies acted maliciously, an element the *Geiger* decision did not address. "The term 'malicious' means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996); *accord Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Malice may be actual or implied, and "[i]mplied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding

10

circumstances.'" *Stelluti*, 94 F.3d at 88 (quoting *First Nat'l Bank of Maryland v. Stanley* (*In re Stanley*)*,* 66 F.3d 664, 668 (4th Cir. 1995)); *accord Ball*, 451 F.3d at 69. "[M]alice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another," *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*)*,* 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994) (internal quotation marks and citation omitted)*, aff'd*, 94 F.3d 84 (2d Cir. 1996); *accord District Court Decision*, 517 B.R. at 454 (quoting *Aldus Green Co. v. Mitchell* (*In re Mitchell*), 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998)); *Vyshedsky v. Soliman* (*In re Soliman*), Adv. Pro. No. 13–01106 (MG), 2015 WL 6282403, at *5 (Bankr. S.D.N.Y. Oct. 22, 2015), and "may be found . . . upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor." *Bundy Am. Corp. v. Blankfort* (*In re Blankfort*)*,* 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998); *accord Forrest v. Bressler* (*In re Bressler*), 387 B.R. 446, 454-55 (Bankr. S.D.N.Y. 2008).

In the *Bankruptcy Court Decision*, this Court found that Margulies acted maliciously. Specifically, he drove his car into Hough even though he had an opportunity to brake prior to hitting Hough. (Tr. at 243:15-19 ("Q: Did you apply your brake? A: No. Q: If you had you would have stopped before you hit him, right? A: Yes.").) "[D]riving at a flagman (or any pedestrian) to force him out of the way is 'contrary to commonly accepted duties in the ordinary relationships among people.'" *Bankruptcy Court Decision*, 2013 WL 2149610, at *4 (quoting *Navistar Fin. Corp.*, 167 B.R. at 33). The Court also found support in debtor's guilty plea to assault in the third degree under N.Y. Penal Law § 120.00(2), thereby conceding that he acted "recklessly," a "culpable mental state involving a conscious disregard of 'a substantial and

unjustifiable risk' and conduct constituting 'a gross deviation from the standard of conduct that a reasonable person would observe in the situation.'" *Bankruptcy Court Decision*, 2013 WL 2149610, at *4 (quoting N.Y. PENAL LAW § 15.05(3)).

The District Court remanded to this Court to make findings regarding malice because the Court's earlier finding was "inextricably tied to its finding of willfulness" which was reached applying an erroneous, objective standard. *District Court Decision*, 517 B.R. at 454-55. As part of this inquiry, the Court was also directed to determine whether Margulies' actions were motivated by an economic benefit – to arrive punctually at an important business meeting – and, therefore, not malicious. *District Court Decision*, 517 B.R. at 455, 462.

Here, the totality of the circumstances compels a finding of implied malice within the meaning of 11 U.S.C. § 523(a)(6). At the outset, while willfulness and maliciousness are separate elements, they are obviously interrelated. I suspect that absent some privilege recognized in the law such as self-defense, *see generally* RESTATEMENT (SECOND) OF TORTS § 890, one who intentionally causes injury to another, or acts with substantial certainty that physical injury will occur, acts without just cause or excuse. The Court has found that Margulies was substantially certain that his conduct would cause injury to Hough.

Furthermore, even though Margulies may have lacked hatred or ill-will and did not intend to harm Hough, malice may be implied because he acted "contrary to commonly accepted duties in the ordinary relationships among people." It is unacceptable to drive a car at a pedestrian to clear him from your intended path. In addition, Margulies admitted through his guilty plea that he acted "recklessly" within the meaning of N.Y. PENAL LAW § 15.05. He therefore admitted

12

that he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that his

conduct would injure Hough, and that the risk was "of such nature and degree that disregard

thereof constitute[d] a gross deviation from the standard of conduct that a reasonable person

would observe in the situation."  Recklessness alone does not necessarily establish a willful and

malicious injury.  *See Woods v. Alexander* (*In re Alexander*), 503 B.R. 19, 22 (Bankr. W.D.N.Y.

2013).  Nevertheless, Margulies' admission that he was aware of the risk to Hough and that his

conduct grossly deviated from the standard of conduct of a reasonable person describes conduct

consistent with implied malice.  When considered in light of the totality of the circumstances –

rolling forward toward Hough without intending to apply the brakes, even when Hough could no

longer escape – supports the finding that he acted with implied malice.

Margulies argues, however, that his actions were motivated by a desire to reap an

economic benefit, and therefore, could not be malicious.  It is true that an economic justification

may negate malice where the underlying claim involves an economic tort because in such

circumstances no tort has actually been committed.  *See* RESTATEMENT (SECOND) OF TORTS §

890 cmt. *a* ("The privilege that one has to compete in business at the expense of competitors (see

§§ 766- 774) comes within this category" of conduct that creates an undue risk to a third party

but is not actionable unless the conduct is unreasonable.)  The District Court identified two cases

that applied this principle.  In *Novartis Corp. v. Luppino* (*In re Luppino*), 221 B.R. 693 (Bankr.

S.D.N.Y. 1998), the debtor was employed by a company that leased computer equipment needed

in its business.  221 B.R. at 696.  Without his employer's knowledge, the debtor assisted a third

party computer equipment lessor to get on the employer's approved vendors list in return for

kickback payments on approved bids.  *Id*. at 697.  The employer sued the debtor claiming

13

commercial bribery and breach of fiduciary duty, and the state court rendered judgment in favor of the employer on those counts. *Id.* at 697-98.

After commencement of debtor's chapter 7 case, his employer sought a determination that its judgment was non-dischargeable under § 523(a)(6), and both sides moved for summary judgment. *Id.* at 699-700. Reading *Geiger* to require actual or Biblical malice, *id.* at 700, the Bankruptcy Court stated that actual malice may be implied if the "conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor," and no matter how deplorable the underlying conduct may be, § 523(a)(6) will not prevent the discharge of the debt absent "some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in *In re Stelluti.*" *Id.* The Bankruptcy Court concluded that the debtor had accepted bribes to advance his own economic self-interest, and "ordinary tort or breach of contractual or statutory duty generally is not sufficient to deny discharge under subsection (6) without some aggravating circumstance." *Id.*

In *Dynamic Int'l, Inc. v. Rouette* (*In re Rouette*), Adv. P. No. 13–02014 (ASD), 2014 WL 2708312 (Bankr. D. Conn. June 13, 2014), the debtor entered into a contract to purchase computerized milling machines from a seller and provided the seller with a purchase money security interest in the goods. *Id.* at *1-2. The debtor subsequently resold the collateral to a third party for a profit but failed to pay back the original seller. *Id.* at *2. After the initiation of the debtor's bankruptcy case, the seller commenced an adversary proceeding, *inter alia*, to determine the non-dischargeability of the debt under 11 U.S.C. § 523(a)(6). *Id.* at *6. Quoting *Luppino*,

14

the *Rouette* court concluded that the evidence did not suggest that the debtor deprived the

secured party of the proceeds maliciously.  Instead, he obviously thought it in his financial

interests to use the proceeds to pay another creditor first.  *Id.* at *9.

Whatever role economic justification may play as a defense to a § 523(a)(6) claim based

on a commercial tort, it does not excuse Margulies' assault or prohibit a finding of implied

malice.  There is no economic benefit that would justify driving into Hough in order to get to an

important business meeting.

Accordingly, the Court concludes that Margulies acted willfully and maliciously within

the meaning of 11 U.S.C. § 523(a)(6).

**B.    Section 3420 Claim**

The second branch of Hough's claim seeks indemnity directly from Margulies' insurer,

USAA, under N.Y. INS. LAW § 3420(b)(1).  In such an action, Hough stands in Margulies' shoes

and has "no greater rights than the insured." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76

N.Y.2d 659, 665 (1990).  As discussed in the *Bankruptcy Court Decision*, the debtor was a

named insured under an automobile liability policy and personal umbrella policy with limits of

$300,000 and $1,000,000, respectively (collectively, the "Policies").  2013 WL 2149610, at *5.

The Policies provided coverage for "occurrences" that were not excluded by the Policies.

"Occurrences" were defined as "accidents," but "accidents" was not defined. *District Court*

*Decision*, 517 B.R. at 457.  Courts interpreting the term "accident or occurrence"

> have determined that liability coverage depends upon whether the alleged injury
> was intentionally caused or was an unintended, although foreseeable, result of the
> alleged intentional conduct.  The distinction is drawn between damages which
> flow directly and immediately from an intended act, thereby precluding coverage,

15

and damages which accidently arise out of a chain of unintended though expected
or foreseeable events that occurred after an intentional act. Ordinary negligence
does not constitute an intention to cause damage; neither does a calculated risk
amount to an expectation of damage. To deny coverage, then, the fact finder must
find that the insured intended to cause damage.

*Brooklyn Law Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988) (quoting *Cont'l Ins. Co. v. Colangione*, 484 N.Y.2d 929, 930-31 (N.Y. App. Div. 1985)); *accord District Court Decision*, 517 B.R. 457. A loss results from an "accident" where, from the standpoint of the insured, the loss was unexpected, unusual or unforeseen. *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 808 N.E.2d 1263, 1265 (N.Y. 2004); *Agoado Realty Corp. v. United Int'l Ins. Co.*, 733 N.E.2d 213, 215 (N.Y. 2000); *see City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir.1989) ("Recovery will be barred only if the insured intended the damages, . . . or if it can be said that the damages were, in a broader sense, 'intended' by the insured because the insured knew that the damages would flow directly and immediately from its intentional act.") (citations omitted).

Hough bears the burden of proving that coverage existed.[3] *District Court Decision*, 517 B.R. at 455. If he carries this burden, the burden would ordinarily shift to USAA to show that an exclusion defeated coverage. However, because USAA breached its duty to defend in state

---

[3]      Citing *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441 (N.Y. 1985), Hough argues that USAA bears the burden of proving lack of coverage. (*Hough Brief* at 4 n. 6.) However, the District Court has already ruled that Hough bears the burden of proving coverage, and that ruling is law of the case. In addition, the insurer in *Servidone* was relying on a policy exclusion. 477 N.E.2d at 445 ("If the insurer does not establish that this loss falls entirely within the policy exclusion as claimed, it will have failed to sustain its burden").

court, it may not rely on the Policies' exclusions.  Accordingly, the sole issue on remand is

whether the Policies provided coverage by reason of inclusion, not exclusion.  *Id.* at 455-56.[4]

Hough must also show that the incident was fortuitous.  *District Court Decision*, 517

B.R. at 459.  A "fortuitous event" is "any occurrence or failure to occur which is, or is assumed

by the parties to be, to a substantial extent beyond the control of either party."  N.Y. INS. LAW §

1101(2).  As in the case of "accidents," damages that flow directly and immediately from the

insured's intentional act cannot be considered fortuitous.  *Nat'l Union Fire Ins. Co. of Pittsburgh

v. Stroh Cos.*, 265 F.3d 97, 111 (2d Cir. 2001).  The determination of whether an event was

fortuitous must also be made from the perspective of the insured.  *District Court Decision,* 517

B.R. at 459.  The insured bears the initial burden of showing that an accident was fortuitous, and

if the insured meets his burden, the insurer must come forward with evidence showing that the

loss was not fortuitous.  *Nat'l Union Fire Ins.*, 256 F.3d at 109; *Atlantic Mut. Ins. Co. v. Balfour

MacLaine Int'l Ltd.* (*In re Balfour MacLaine Int'l Ltd.*), 85 F.3d 68, 77-78 (2d Cir. 1996).

The District Court hypothesized a scenario in which debtor was not substantially certain

that an injury would result for purposes of dischargeability while the circumstances of the

incident, considered in their totality, would support a finding that the incident was not an

"accident" for coverage purposes.  *District Court Decision*, 517 B.R. at 457.  Another possibility

would be that the insured acted willfully but not maliciously, defeating dischargeability, but

---

[4]    Although the District Court's ruling on this issue is the law of the case, the Court of Appeals ruled in *K2
Inv. Grp., LLC v. Am. Guar. & Liab. Ins. Co.*, 6 N.E.3d 1117 (N.Y. 2014) ("*K2-II*") that an insurer that breached its
duty to defend is not barred from relying on policy exclusions in defense of a subsequent indemnity action provided
that the insurer is not seeking to relitigate issues decided in the underlying case.  *See id.* at 1119-20; *accord District
Court Decision*, 517 B.R. at 456 n. 9.  *K2-II* is discussed at greater length in the final part of this opinion.

17

requiring a finding that the incident was not an accident, defeating coverage.  Where, however, a

debtor has acted both willfully *and* maliciously, it is likely that the plaintiff's injuries did not

result from an "accident."[5]

This is such a case.  The Court has found that Margulies continued to roll forward at a

slow speed even after he was substantially certain that Hough could no longer get out of the way

and would be struck, but did not apply his brakes until after he hit Hough.  Under the

circumstances, hitting and injuring Hough was not unforeseen or unexpected from Margulies'

point of view, and was not an "accident."

In addition, Margulies' conduct must be deemed intentional regardless of Margulies'

subjective intent to harm.  In *Progressive N. Ins. Co. v. Rafferty*, 793 N.Y.S.2d 618 (N.Y. App.

Div. 2005), the insured (Rafferty) and another man (Carman) were fighting next to Rafferty's car

which was only two feet in front of a garage.  In an attempt to extricate himself from the

situation, Rafferty got into his car.  Carman placed himself between the front of the car and the

garage and Carman's friend blocked the car from the rear.  Rafferty accelerated and drove into

the garage door, severely injuring Carman.  *Id.* at 619.

Rafferty's insurer sued and obtained a declaration that it was not under a duty to defend

or indemnify because Rafferty's conduct came within the policy's exclusion for intentional acts.

---

[5]    The Court had previously stated that the "the definition of 'willful and malicious' injuries under bankruptcy
law and 'intentional' injuries under state insurance law appear to be identical," *Hough v. Margulies*, 476 B.R. at
401, and determinations of dischargeability and coverage were inconsistent and mutually exclusive.  Thus, if the
debt was not dischargeable, the loss was not covered, but if the loss was covered, the debt had to be dischargeable.
Hough and USAA agree with this conclusion.  (*Hough Brief* at 13 n. 19; *USAA Brief* at 4 n. 2.)

*Id.* Both Rafferty and Carman appealed contending that Rafferty only lightly stepped on the accelerator and intended only to scare Carman.

The Appellate Division affirmed the lower court's determination that the loss was excluded. The court explained the "well-settled" rule "that there exists 'a narrow class of cases in which the intentional act exclusion applies regardless of the insured's subjective intent." *Id.* (quoting *Slayko v. Sec. Mut. Ins. Co.,* 774 N.E.2d 208, 210 (N.Y. 2002)). In such cases, the injury is "'inherent in the nature' of an act when the act is so exceptional that 'cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm." *Id.* at 619-20 (quoting *Allstate Ins. Co. v. Mugavero,* 589 N.E.2d 365, 369 (N.Y. 1992)). In such cases, the theoretical possibility that the insured did not subjectively intend the harm does not preclude a finding that the act was intentional and as a matter of law and excluded from coverage. *Id.* at 620.

The *Rafferty* Court concluded that the circumstances called for the application of the doctrine. "Carman's injuries were inherent in the act of placing a car in forward motion when but two feet of space existed between the car, a pedestrian and an immovable object, clearly invoking the intentional act exclusion of Rafferty's policy." *Id.* Important for present purposes, the Court also ruled that "Carman's injuries were not caused by an "accident" and were not eligible for no-fault benefits under the policy." *Id.*

Here, Margulies also drove a car at Hough, not to scare him but to convince him to give way because Margulies intended to proceed with or without Hough's permission. Even though Margulies did not intend to harm him, Hough's injury was inherent in the nature of that act. The

19

District Court questioned the applicability of *Rafferty* on three bases: (1) the majority of courts have limited the "inherently intentional" doctrine "'to claims of sexual abuse of children and non-consensual sexual intercourse,'" *District Court Decision*, 517 B.R. at 458 (quoting *Dodge v. Legion Ins. Co.,* 102 F.Supp.2d 144, 151 (S.D.N.Y. 2000)); (2) unlike Margulies and Hough, Rafferty and Carman knew each other and had been fighting, *id.* at 459; and (3) Carman lacked a means of escape. *Id.*

Although *Rafferty* and the instant case are dissimilar in some respects, they are sufficiently similar to support the application of the "inherently intentional" doctrine to Margulies' conduct. Initially, the "inherently intentional" doctrine is not limited to the types of cases identified in *Dodge*, and has been implied in cases involving injuries caused by automobiles where the circumstances dictated its applicability. *E.g., Kemper Independent Ins. Co. v. Ellis*, 8 N.Y.S.3d 770, 773 (N.Y. App. Div. 2015) ("[D]ecedent's death was inherent in the nature of LeVea's conduct in repeatedly ramming decedent's vehicle while they were traveling at high speeds.") (citing *Rafferty*); *Brooks v. Rivera*, 977 N.Y.S.2d 665 (Table), 2013 WL 3793374, at *1 (N.Y. App. T. July 19, 2013) (A conviction for reckless assault does not preclude a finding that an injury was not accidental "where the evidence . . . established that Lamour's injuries were inherent in defendant's act of driving his car onto a sidewalk intending to injure Tyrah.") (citing *Rafferty*).

In addition, while Rafferty and Carman had been fighting prior to the incident, their prior altercation formed no part of the Appellate Division's decision that Rafferty's acts were

20

"inherently intentional."[6]  Rather, the sole fact cited by the court was the act of placing the car in motion where two feet of space separated the car and an immovable object with Carman standing in between.  Here too, Hough lacked a means of escape once Margulies was so close that he could not escape.  In both situations, the driver intentionally drove his car  ahead knowing that there was a person in close proximity who would be hit if he did not stop the car.

Finally, the incident was not "fortuitous."  First, Hough's injury flowed directly and immediately from Margulies' actions.  Margulies was intent on proceeding, and did so even after Hough backed into the path of the car.  Second, incident was not "to a substantial extent beyond the control of either party."  Margulies was in total control of his car.  All he had to do was keep his foot on the brakes, as he had done through two cycles of the 23rd Street traffic light, until Hough stepped away, or if he didn't, until Hough instructed him to proceed.

Accordingly, the Court concludes that Hough failed to sustain his burden of proving that the incident was an "accident" within the meaning of the Policies, and hence, a covered loss.

## C.    *Res Judicata*

Lastly, Hough contends that USAA is barred from contesting coverage under principles of *res judicata*.  His argument is based on the decision of the New York Court of Appeals in *K2-II*, which, Hough maintains, clarified the law of *res judicata*.  (*Hough Brief* at 17.)  In that case,

---

[6]    To the extent pre-existing animus has any bearing, there was sufficient evidence of mutual ill will.  Margulies was annoyed with Hough for holding him up, and Hough's actions indicate that he had no intention of giving in to Margulies desire to proceed in disregard of Hough's authority.

former clients of the insured (Daniels) brought a legal malpractice action based on Daniel's

failure to perfect their lien.  His insurer wrongly refused to defend, the plaintiff's obtained a

default judgment, Daniels assigned his rights against his insurer to the plaintiffs and the plaintiffs

sued the insurer for breach of contract and the bad faith failure to settle the underlying lawsuit.

*K2 Inv. Grp., LLC v. Am. Guar. & Liab. Ins. Co.*, 993 N.E.2d 1249, 1251 (N.Y. 2013) ("*K2-I*").

    The insurer relied on policy exclusions to defend the action.  The Court of Appeals

initially rejected the defense, holding that "by breaching its duty to defend Daniels, American

Guarantee lost its right to rely on these exclusions in litigation over its indemnity obligation."  *Id.*

at 1252.  The Court also stated that the breaching insurer "may not assert in its defense grounds

that would have defeated the underlying claim against the insured."  *Id.* at 1253 (citing *Lang v.*

*Hanover Ins. Co.,* 820 N.E.2d 855, 859 (N.Y. 2004) ("[H]aving chosen not to participate in the

underlying lawsuit, the insurance carrier may litigate only the validity of its disclaimer and

cannot challenge the liability or damages determination underlying the judgment.")).

    In *K2-II*, the Court reconsidered its ruling and reversed *K2-1* on the ground that it was

inconsistent with the Court's prior decision in *Servidone Constr. Corp. v. Sec. Ins. Co. of*

*Hartford*, 477 N.E.2d 441 (N.Y. 1985).  In *Servidone*, the Court held that an insurer that

breached its duty to defend could still dispute coverage in a subsequent indemnity action.  *Id.* at

444-45.  In *K2-II*, the Court recognized that *Servidone* did not distinguish between defenses

based on inclusion or exclusion under the terms of the policy, *K2-II,* 6 N.E.3d at 1120, and ruled

that the breaching insurer could rely on policy exclusions in defense of the indemnity lawsuit.

*Id.*  As a result, *K2-II* eliminated the distinction between coverage based on inclusion and

exclusion under the policy, and the breaching insurer may assert either basis to defeat its

22

liability.  *District Court Decision*, 517 B.R. at 456 n. 9.

K2-II did not, however, break any new ground in the law of *res judicata*.  The Court restated that "that the issues in the suit brought against the insured are now res judicata," but added that this was "irrelevant" because the insurer was seeking to litigate the coverage exclusions rather than relitigate the issues in the underlying action against Daniels.  *K2-II*, 6 N.E.3d at 1119.  The same is true here; USAA is not trying to relitigate Margulies' liability to Hough or the extent of his injuries.  Instead, USAA contends that the injury Hough suffered is not covered by the Policies.

Hough nevertheless presses his *res judicata* argument in an effort to preclude USAA from maintaining that the incident was not an accident or Hough's loss was not covered.  USAA responds that the District Court has already rejected Hough's *res judicata* argument on the merits, and determination of the issue is outside of the District Court's mandate.  I agree.  The District Court initially ruled that it lacked jurisdiction to consider the argument because it was raised for the first time on appeal.  *District Court Decision*, 517 B.R. at 460 (citing *Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 609–10 (2d Cir.1999) and *Amalgamated Clothing and Textile Workers Union v. Wal–Mart Stores, Inc.*, 54 F.3d 69, 72–73 (2d Cir.1995)).  The District Court also ruled that it nevertheless had the ability to consider an issue not raised below to prevent manifest injustice, but concluded that there was no manifest injustice because Hough had failed to raise his *res judicata* argument during years of litigation in state and federal court.  *Id.* at 460-61.  Finally, the District Court rejected the argument on the merits because USAA could not have raised Margulies intent as a defense to Hough's underlying negligence claim against Margulies.  *Id.* at 461-62.

23

Hough argues before this Court that the District Court made a mistake; he did raise *res judicata* before this Court and the state court. Hence, I should consider the *res judicata* argument to prevent a manifest injustice resulting from the District Court's mistake. In addition, the District Court's decision on the merits was advisory, and Hough is entitled to prevail on the merits. (*Hough Brief* at 16-19.)

At the outset, if Hough believed that the District Court had made a mistake, he should have raised it with the District Court through a motion for reargument. In any event, his implicit contention that he raised the same *res judicata* argument before the District Court that he did before this Court is disingenuous. He cites to paragraphs 14 and 19 in the proposed findings that he submitted after the trial and to a page in his post-trial reply brief. (*Hough Brief* at 16 n. 22.) Paragraph 14 proposed a finding that "[t]he judgment in the underlying personal injury action is res judicata between the parties of the factual issues of Margulies' liability and culpability and damages. Margulies has been found 100% culpable for Hough's injuries." (*Plaintiff's Proposed Findings of Fact*, dated Mar. 5, 2013, at ¶ 14 (ECF Doc. # 92).) Paragraph 19 proposed a finding that "Margulies and USAA cannot go behind the judgment in the underlying action to raise defenses extending to the merits underlying the judgment, and so cannot challenge the facts of the liability or damages determination." (*Id.* at ¶ 19.) Both proposed findings went to the relitigation of Margulies' liability to Hough and cannot be read as arguing that the underlying litigation foreclosed inquiry into Margulies' intent.

In fact, Hough did apparently raise the *res judicata* argument before the state court and lost it. The Appellate Division previously ruled that "since the underlying action culminated in a default judgment and the issue whether the insured's acts were intentional or negligent was not

24

litigated, defendant is not collaterally estopped to assert in this action that its insured caused

plaintiff's injuries intentional." *Hough v. USAA Cas. Ins. Co.*, 940 N.Y.S.2d 41, 42 (N.Y. App.

Div. 2012). This conclusion is consistent with the rule announced by the Court of Appeals in

*K2-II* that bars the relitigation of issues in the underlying action only when principles of *res*

*judicata* so dictate. *K2-II*, 6 N.E.3d at 1119.

Hough's reference to page 7 of the *Reply Memorandum of Plaintiff Hough to Defendants'*

*Post Trial Memos*, dated Apr. 18, 2013 (ECF Doc. # 104) also gets him nowhere. The cited

reference responded to an argument made by USAA that there was no coverage because

Margulies' actions constituted a civil assault. Hough argued, *inter alia*, that "the underlying

judgment is not for damages arising from fears or threats, but for injuries sustained as a result of

being struck by the car. USAA's new argument seeks to challenge and go behind the merits of

the underlying judgment, which it is barred from doing as a matter of law." (*Id.* at 7.) Again,

Hough did not argue that *res judicata* barred USAA from litigating the question of Margulies'

intent, an issue he had lost in the Appellate Division.

I also reject the contention that the District Court's ruling on the merits was *dicta* or

advisory. The District Court rejected Hough's *res judicata* argument on three separate,

alternative grounds: it lacked subject matter jurisdiction because Hough had failed to raise the

argument below, the refusal to consider the argument on appeal did not result in manifest

injustice and the argument lacked merit. The fact that the District Court did not remand to

consider the question of whether *res judicata* barred USAA from litigating the issue of

Margulies' intent strongly suggests that the District Court thought it had decided the matter.

25

Finally, to the extent it is appropriate for me to consider it, I also reject Hough's *res judicata* argument on the merits. As the District Court explained:

> To make out an affirmative defense of *res judicata,* "a party must show that [i] the previous action involved a final adjudication on the merits; [ii] the previous action involved the plaintiffs or those in privity with them; and [iii] the claims asserted in the subsequent action were, or could have been, raised in the prior action."

*District Court Decision*, 517 B.R. at 461 (quoting *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980))) (alterations omitted). To satisfy the third requirement, the proponent must show that "the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." *Id.* (quoting *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (emphasis in original).

The District Court concluded that Hough had not satisfied the third requirement. Hough sued Margulies on a negligence theory. Even if USAA had assumed the defense of the underlying negligence action, it could not have defended Margulies' negligent conduct by arguing that he actually intended to injure Hough. *See id.* at 461-62 (citing *Hough v. USAA Cas. Ins. Co.,* 940 N.Y.S.2d at 42 ("Defendant's disclaimer of its duty to defend its insured in the underlying action does not bar it from asserting that its insured injured plaintiff intentionally, because that assertion is not a defense extending to the merits of plaintiff's personal injury claims against the insured.") (internal citation omitted)). I agree and reject Hough's *res judicata* argument for the same reason.

## CONCLUSION

Hough is entitled to judgment declaring that Margulies' debt is not dischargeable and USAA is entitled to judgment dismissing Hough's claim for indemnification under the Policies.

26

The Court has considered the other arguments made by the parties and concludes that they have

been rendered moot or lack merit.  Settle judgment on notice.


Dated:  New York, New York
         November 16, 2015


                                        /s/ *Stuart M. Bernstein*
                                          STUART M. BERNSTEIN
                                        United States Bankruptcy Judge